UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

UNITED STATES OF AMERICA PLAINTIFF

v. CRIMINAL ACTION NO. 3:24-CR-108-BJB

HAITHAM AL-DULAIMI
ABDULLAH ALSAJEE
HAIDER LAZEM
HASAN WASAK DEFENDANTS

**TRIAL MEMORANDUM**
*-Filed Electronically-*

Comes now the United States of America, by counsel, Assistant United States Attorney Alicia P. Gomez, and submit this Trial Memorandum to assist the Court in presiding over this trial.

## A. STATUTES INVOLVED AND ELEMENTS OF OFFENSES

### COUNT 1

**Conspiracy**

(1) An agreement between two or more persons to commit a specified federal "offense" or to "defraud the United States",

(2) the defendant(s) knowingly and willfully joined in that agreement, and

(3) one of the conspirators knowingly committed an overt act in furtherance of the agreement.

In this case, the proposed § 371 conspiracy is a conspiracy to commit the following specified offenses and to defraud the United States:

- smuggling goods from the United States (18 U.S.C § 554)
- engaging in the business of dealing in firearms (18 U.S.C. § 922(a)(1)(A))
- knowingly making false statements to firearms dealers (18 U.S.C. § 922(a)(6))
- straw purchasing of firearms (18 U.S.C. § 932(b))
- defrauding the United States Department of Commerce by interfering with and obstructing a lawful government function.

Title 18, United States Code, Section 371.

**COUNT 2**

**Conspiracy to Violate the Export Control Reform Act**

(1) The defendant(s), and others, willfully combined, conspired, and agreed together and with each other;

(2) to export or cause the exportation of firearms from the United States to Iraq;

(3) without first having obtained the required license or authorization from the United States Department of Commerce.

Title 50, United States Code, Section 4819 and Title 15, Code of Federal Regulations, Parts 730-774.

**COUNT 3**

**Violation of the Export Control Reform Act**

(1) The defendant, aided and abetted by others, did willfully export, attempt to export, or cause to be exported from the United States to Iraq items controlled under Export Control Reform Act (ECRA) and the Export Administration Regulations ("EAR");

(2) without having first obtained the required license or authorization for such export from the United States Department of Commerce.

Title 50, United States Code, Section 4819; Title 15, Code of Federal Regulations, Parts 730-774; and Title 18, United States Code, Section 2.

**COUNT 4**

**Smuggling Goods From the United States**

(1) The defendant, aided and abetted by others, exported, sent, attempted to export, or attempted to send merchandise as described in the indictment,

(2) that the defendant's exportation or sending was contrary to the laws or regulations of the United States; and

(3) that the defendant knew the exportation or sending of the merchandise was contrary to law or regulation.

Title 18, United States Code, Sections 554(a) and 2.

**COUNT 5**

**Dealing in Firearms Without a License**

(1) The defendant was not licensed to deal firearms;

(2) The defendant willfully engaged in the business of dealing firearms; and

(3) in the course of such business did ship, transport, or receive firearms in interstate and foreign commerce.

Title 18, United States Code, Sections 922(a)(1)(A), 923(a), and 924(a)(1)(D).

**COUNTS 6 - 29**

**False Statement During Purchase of a Firearm**

(1) The defendant knowingly made a false written statement to a federally licensed firearms dealer;

(2) The false statement was made in connection with the acquisition or attempted acquisition of a firearm; and

(3) The statement was intended or likely to deceive such firearms dealer with respect to a fact material to the lawfulness of the sale of the firearm to the defendant.

Title 18, United States Code, Sections 922(a)(6) and 924(a)(2).

## B. STATEMENT OF FACTS

The United States' statement of facts is as follows:

From at least in or about February 2023 through at least on or about September 16, 2024, in the Western District of Kentucky, Jefferson County, and elsewhere, the defendants, Haitham Al-Dulaimi, Abdullah Alsajee, Haider Lazem, and Hasan Wasak, and others, did knowingly combine, conspire, confederate, or agree together and with each other to commit offenses against the United States, that is: to fraudulently and knowingly export and send from the United States firearms contrary to laws and regulations of the United States, and to receive, conceal, buy, or facilitate the transportation and concealment of such firearms prior to exportation, knowing the same to be intended for exportation contrary to laws and regulations of the United States; to engage in the business of dealing in firearms without a license, and in the course of such business, to ship, transport, or receive firearms in interstate and foreign commerce; to knowingly make false and fictitious statements to firearms dealers intended and likely to deceive the dealer with respect to

facts material to the lawfulness of the sale and other disposition of such firearms, in connection with the acquisition of firearms from a federally licensed firearms dealer; to knowingly purchase any firearm in or otherwise affecting interstate or foreign commerce for, or on behalf of, or at the request or demand of any other person, knowing or having reasonable cause to believe that such other person intended to possess, sell, or otherwise dispose of the firearm in furtherance of a felony; and to defraud the United States by interfering with or obstructing the lawful governmental function of the United States Department of Commerce, that is, the enforcement of laws and regulations prohibiting the export of goods, including firearms, from the United States to foreign destinations without a license or authorization, by deceit, craft, trickery, and dishonest means.

From at least February 2023 through at least September 2024, Abdullah Alsajee, Haider Lazem, Hasan Wasak, and others, purchased firearms from Federal Firearm Licensees and at gun shows, which were then transferred to co-conspirator Haitham Al-Dulaimi. The type and quantity of firearms purchased was directed by their co-conspirator, Haitham Al-Dulaimi. Upon or prior to Haitham Al-Dulaimi's receipt of the firearms, Haitham Al-Dulaimi provided payment to the co-conspirators for the firearms purchased. Haitham Al-Dulaimi and others, would and did package the firearms, conceal them inside vehicles, and transport the vehicles (containing the concealed firearms) from Louisville, Kentucky to Seastar, a freight forwarder, in Dearborn, Michigan. Haitham Al-Dulaimi then paid Seastar to ship the vehicles (containing the concealed firearms) in a shipping container to a co-conspirator in Iraq, who would then coordinate the distribution of the firearms.

Between on or about February 12, 2023, and on or about April 3, 2023, Hasan Wasak purchased seven (7) firearms on at least 3 occasions by falsely and fraudulently representing that

he was the actual purchaser of the firearm or firearms, which Hasan Wasak then provided to Haitham Al-Dulaimi.

Between on or about February 25, 2023, and on or about June 10, 2023, Haider Lazem purchased nineteen (19) firearms on at least 10 occasions by falsely and fraudulently representing that he was the actual purchaser of the firearm or firearms, which Haider Lazem then provided to Haitham Al-Dulaimi.

Between on or about August 19, 2023, and on or about November 15, 2023, Abdullah Alsajee purchased 24 firearms on at least 11 occasions by falsely and fraudulently representing that he was the actual purchaser of the firearm or firearms, which were then transferred to Haitham Al-Dulaimi. In addition, on or about September 16, 2024, Abdullah Alsajee, purchased three (3) firearms that were intended for Haitham Al-Dulaimi.

Haitham Al-Dulaimi would obtain these purchased firearms and conceal them inside multiple layers of packaging that was further concealed inside vehicle door panels. The vehicles would then be transported to an automotive logistics and packaging specialist contracted by Seastar to ensure the vehicles were properly packaged inside the shipping container for transatlantic shipping. The shipping container would be shipped to co-conspirators in Iraq by Seastar.

On or about October 10, 2023, an Electronic Export Information (EEI) form was filed for the shipment of a container. The EEI form sent to Seastar listed the name Haitham Al-Dulaimi as the principal party in the United States for the shipment and listed an ultimate consignee as an individual located in Baghdad, Iraq. The shipping container was assigned number MRKU4360014. The EEI form listed three vehicles which were contained in the shipping container: 1) a 2022

Chevrolet Malibu, VIN 1G1ZB5STXNF192000; 2) a 2022 Kia Forte, VIN 3KPF24AD0NE416514; 3) a 2022 Hyundai Elantra, VIN KMHLS4AG5NU313227.

On or about October 13, 2023, Seastar shipped, at Haitham Al-Dulaimi's direction, shipping container MRKU4360014, destined for Baghdad, Iraq. At the request of law enforcement, the shipping container was redelivered to the United States at the Port of Newark APM terminal on or about January 23, 2024. Upon redelivery, the original seal for shipping container MRKU4360014 remained intact. On or about February 1, 2024, law enforcement conducted an examination of shipping container MRKU4360014. One of the vehicles, the 2022 Hyundai Elantra, VIN KMHLS4AG5NU313227, contained, among other things, 29 firearms, and 26 firearm magazines, concealed within the door panels of the vehicle. Another one of the vehicles, the 2022 Kia Forte, VIN 3KPF24AD0NE416514, contained, among other things, 9 firearms, and 12 firearm magazines, concealed within the door panels of the vehicle.

The defendants dispute all of the above outlined facts.

## C. SUBSTANTIVE ISSUES OF LAW

At this time, there are no unresolved substantive issues of law.

## D. EVIDENTIARY ISSUES

a) Stipulations

As of the filing of this memorandum, the defendants have not agreed to any stipulations.

b) Evidence of Potential Penalty is Not Relevant.

The United States requests that the defendant be precluded from introducing evidence or commenting in any way about the potential penalty he would face upon conviction. Courts have long held that the question of punishment should never be considered by a jury in a criminal case.

*United States v. McDonald*, 935 F.2d 1212, 1222 (11th Cir. 1991). "It is axiomatic that it is the exclusive function of juries to determine whether defendants are guilty or not guilty, and of the Court to determine matters of punishment." *United States v. Davidson*, 367 F.2d 60, 63 (6th Cir. 1966). (Citing *Sullivan v. United States*, 317 F.2d 101, 102 (5th Cir. 1963)).

Section 8.05 of the Sixth Circuit Pattern Criminal Jury Instructions, current through May 1, 2025, makes it clear that any decision regarding punishment in a criminal case is the province of the trial judge, not the jury. Therefore, any evidence, question, or argument regarding penalty would be improper and thus inadmissible.

*c)* *Internet maps*

Professional looking maps can be created from Internet sources such as Google Maps, Google Earth, MapQuest, and Bing Maps. The maps may properly be the subject of judicial notice. *See, e.g., Cloe v. City of Indianapolis*, 712 F.3d 1171, 1177, n. 3 (7th Cir. 2013) ("[w]e have taken judicial notice of—and drawn our distance estimates from—images available on Google Maps, 'a source whose accuracy cannot reasonably be questioned, at least for the purpose of determining' general distances." (quoting *United States v. Perea-Rey*, 680 F.3d 1179, 1182, n. 1 (9th Cir. 2012)).

d) *Co-conspirator statements*

Federal Rule of Evidence 801(d)(2)(E) provides that a statement is not hearsay if it is offered against a party, and is a statement by a coconspirator of a party during the course and in furtherance of the conspiracy. The foundation for admission of the statement is that it: (1) there was a conspiracy, (2) its members included the declarant and the person against whom the

statement is offered, and (3) the statement was made during the course of and in furtherance of the conspiracy.

The trial judge is not constrained by formal rules of evidence, and can consider the proffered hearsay statements of the co-conspirator to determine whether a conspiracy existed. *Bourjaily v. United States,* 483 U.S. 171 (1987).

"Records that can be shown by a preponderance of the evidence to have been made by a member of a conspiracy may be admitted under Rule 801(d)(2)(E) even if their precise author cannot be identified." *United States v. Lyons,*740 F.3d 702, 719 (1st Cir. 2014).

In *Crawford v. Washington*, the Supreme Court observed that "statements in furtherance of a conspiracy" are "by their nature . . . not testimonial." *Crawford*, 541 U.S. at 56; see also *Giles v. California*, 554 U.S. 353, 374 n.6 (2008) (coconspirator hearsay does not violate Confrontation Clause because "it [is] not (as an incriminating statement in furtherance of the conspiracy would probably never be) testimonial").

**E. POTENTIAL TRIAL PROBLEMS**

The United States is not aware of any potential trial problems.

**F. SUBSTANTIVE AND SPECIAL JURY INSTRUCTIONS**

The United States has tendered proposed jury instructions by separate filing.

**G. PROPOSED VOIR DIRE QUESTIONS**

1. Is any member of the panel acquainted, either professionally or socially, with:

    a. The defendant?
    b. The defense attorney?
    c. The case agent?
    d. The Assistant United States Attorneys?

2. This is a criminal case. Do any of you have any moral, religious or philosophical beliefs that would prohibit you from being a fair and impartial juror in this case? In other words, does anyone have a problem with sitting in judgment of another person?

3. This case was investigated by the Bureau of Alcohol, Tobacco, Firearms & Explosives (ATF), Homeland Security Investigations (HSI), the Federal Bureau of Investigation (FBI), and the Internal Revenue Service (IRS). Has any member of the panel or any member of your family or your close friend/associate had any negative contact with any law enforcement agency? Does anyone hold any negative views of law enforcement officers in general? Would these experiences or opinions affect your ability to be fair and impartial to the government in this case?

4. Has any member of the panel or any member of your immediate family or close friend/associate had an unpleasant experience in court or involving lawyers which would cause you to be biased against either of the parties?

5. Have you or anyone close to you ever been investigated, arrested or convicted of a non-traffic related violation of state or federal law?

6. Have you or anyone in your family or a close friend ever testified in a criminal trial?

7. Have you or anyone in your family or a close friend ever been involved in a suit or other dispute against any government agency, particularly with the Bureau of Alcohol, Tobacco, Firearms & Explosives (ATF), Homeland Security Investigations (HSI), the Federal Bureau of

Investigation (FBI), and the Internal Revenue Service (IRS)?

8. Have you ever served on jury duty before? Was it a criminal case or a civil case? If so, was the jury able to reach a verdict? What was it?

10. Have you or anyone in your family or a close friend ever received any legal training, practiced law, or worked in an attorney's office?

11. Is there any member of the panel who would not believe the sworn testimony of a government or state agent merely because he or she was a police officer or government employee?

12. How many of you regularly watch crime dramas on t.v. like "C.S.I." or "Law and Order"? Asking you if you understand that those shows are fiction and this is real, would insult your intelligence and that is not my purpose. However, I want to ask some questions about expectations. Many times those shows feature a scientific test that solves the case or a witness who confesses on the witness stand. Do any of you expect to hear those types of evidence? The judge will instruct you on the elements of each offense. Those are the facts that the government must prove to you beyond a reasonable doubt. That is the burden. Will any of you hold the government to a different burden based on your expectations or require them to prove to you something that is not in the instructions. In other words, can you convict someone if the government has proven all the elements of the crime, but has not proven something else, something about which you may be wondering?

13. That brings me to the burden of proof. You will hear that the government has the burden of proof and the standard it has to meet is proof beyond a reasonable doubt. That does not mean that they have to prove the case beyond all doubt, just that which is reasonable. Does anyone have a problem with that?

14. There are two types of evidence, direct and circumstantial. Direct evidence can be physical evidence such as a gun or some drugs. It can also be testimony. Circumstantial evidence is evidence that requires jurors to draw an inference from a set of facts. For example, if you go to bed at night and there is no snow on the ground, but when you wake up in the morning, the ground is covered with snow, your observations are circumstantial evidence that it snowed during the night. Does everyone understand that the law has no preference for either type of evidence and doesn't presume that one is better than the other? Does anyone have a problem with that?

15. If selected as a juror in this case, do you understand that any personal feelings you may have must be set aside if they conflict with the law as the Court will instruct you?

16. Do you understand that in federal courts, punishment, if any, is imposed by the Court and that your verdict must in no way be affected by your concern for what punishment, if any, would be proper? Would each of you be able to consider the facts of the case and render a verdict without concern for what punishment would later be imposed?

17. Do you understand that a defendant on trial is entitled to a presumption of innocence, but as with all presumptions, it may be overcome by competent evidence?

18. Do any of you have difficulty hearing, seeing or sitting for long periods of time?

19. Do any of you have events going on in your lives that would distract your attention

from the testimony and evidence of this case?

20. Do any of you know one another? If so, would you be influenced by the opinions or beliefs of the person you know?

## H. EXHIBIT LIST

The United States has submitted under separate cover a draft exhibit list and will supplement as needed. The exhibits will be comprised of photographs, documents, and physical evidence collected, including firearm evidence. The United States will confer with counsel prior to trial regarding the authentication of the exhibits and bring to the Court's attention any issues arising therefrom.

## I. WITNESS LIST

The United States shall submit, by separate filing, a proposed witness list for the Court's *in camera* review.

Respectfully submitted,

KYLE G. BUMGARNER
UNITED STATES ATTORNEY

*/s/ Alicia P. Gomez*
Alicia P. Gomez
Assistant United States Attorney
717 West Broadway
Louisville, Kentucky 40202
Tel: (502) 582-5911
alicia.gomez@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on April 3, 2026, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to counsel of record for the defendant.

*/s/ Alicia P. Gomez*
Alicia P. Gomez
Assistant United States Attorney