UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

**ELECTRONICALLY FILED**

UNITED STATES OF AMERICA PLAINTIFF

v. CRIMINAL ACTION NO. 3:24-CR-00108-BJB-1

HAITHAM AL-DULAIMI DEFENDANT

## HAITHAM AL-DULAIMI'S SENTENCING MEMORANDUM

Haitham Al-Dulaimi has pleaded guilty to exporting firearms illegally, and the United States has agreed to recommend that he serve a sentence equal to the low end of the applicable United States Sentencing Guidelines range. (Plea Agreement, R. 92 pp. 6-7 ¶ 11, Page ID# 406-407.) The Presentence Report has determined that the specified Guidelines range corresponds to offense level 25, which calls for a minimum penalty of 57 months in prison. (Presentence Rep. pg. 16 ¶ 65.) Courts nationwide impose a substantially shorter average sentence – 39 to 40 months – on defendants with Guidelines calculations identical to Mr. Al-Dulaimi's (*id.* pg. 16 ¶ 66); moreover, the fact that Mr. Al-Dulaimi must be deported at the end of his sentence means that he will have to spend six to twelve months longer behind bars than other defendants, because he cannot qualify for early release to a

halfway house. The Court accordingly has good, objective reasons to find that a sentence below the Guidelines minimum will be a sufficient penalty in this case.

Mr. Al-Dulaimi lived in Baghdad, Iraq, until 2014, when he was about twenty years old. Iraq was torn by a bloody civil war during this period, and Baghdad was the frequent site of car-bombings and mass killings; Mr. Al-Dulaimi lived in constant fear of being murdered or kidnapped, and his family was imperiled by his mother's association with the local broadcast news media. (Presentence Rep. pg. 13 ¶¶ 49-50); (*see* Attach. 1, Letters of Support, pg. 2.) The Al-Dulaimis came to the United States in 2014, and Mr. Al-Dulaimi soon found employment as an insulation installer, a job he worked at steadily ever since; his most recent employer enthused that he "wish[es] we had ten more like him." (*Id.* at pg. 15 ¶¶ 59-60.)

In recent years, Mr. Al-Dulaimi has become the caretaker for his father, whose sight, hearing, and memory has declined significantly in his later years. (Attach., Letters of Support, pg. 1.) Mr. Al-Dulaimi's sister, Tiba, explains that her father "has significant disabilities that affect his everyday safety and independence. … There have been occasions when our father has gone outside and walked in the street late at night without fully understanding the danger around him. At other times, he may wake from a dream confused and attempt to walk outside." (*Ibid.*)

"Haitham has been the person living with him and providing the immediate help and supervision he needs," she continues: "He watches over our father, assists him when he becomes confused, and helps make sure he returns home safely. Our father has become dependent on Haitham's presence and assistance." (*Ibid.*) A friend of Mr. Al-Dulaimi expresses his "particular[]respect" for the way he takes care of his parents: "He treats them with respect and makes an effort to be there for them and take care of their needs." (*Id.* at pg. 5.) "The way a person treats his parents says a great deal about his character," observes another friend, "and Haitham has always demonstrated patience, respect, and responsibility toward them." (*Id.* at pg. 3.) Mr. Al-Dulaimi has similarly devoted himself to the care of his younger brother, who is deaf. (*Id.* at pg. 2.)

After Mr. Al-Dulaimi is sentenced and surrenders for incarceration, he will pose no future threat of harm to the American public, regardless of the actual length of his prison term. That is because the government will file a detainer to hold Mr. Al-Dulaimi in custody until he is deported, meaning that he will remain confined until he is delivered to another country, and he will not thereafter be allowed to come back to the United States. *See* 8 U.S.C. § 1326(a); (Presentence Rep. pg. 13 ¶ 51). In contrast with most defendants, therefore, the lengthening of Mr. Al-Dulaimi's period of imprisonment will not yield any improvement in

community safety: the risk of harm attributable to Mr. Al-Dulaimi's potential future wrongdoing is effectively zero, whether he is deported immediately or ten years from now.

This reality places the economics of Mr. Al-Dulaimi's incarceration into unusually sharp relief. If he is imprisoned for 57 months – the Guideline minimum – the cost to taxpayers will be about $260,000.00. (*See* Presentence Rep. pg. 18 ¶ 78 (cost of imprisonment)). If he is imprisoned for 39 months – the national average for offenders convicted of Mr. Al-Dulaimi's crime (*see id.* pp. 16-17 ¶ 66) – the taxpayer's cost will be about $178,000.00: a savings of some $82,000.00 without any detrimental effect on the public's safety.

One more reality merits consideration in this context. Unlike the great majority of defendants this Court will sentence, Mr. Al-Dulaimi will not qualify for release into a halfway house for the last 12 months of his term of imprisonment, because the Bureau of Prisons refuses to place inmates with active ICE detainers in pre-release custody. *Adepoju v. Scales*, 762 F.Supp.3d 306, 310 (E.D. Va. 2025); *id.*, Ex. 6-1, Memorandum from Melissa Arnold, U.S. Dep't of Just., *Updated Guidance on Application of Federal Time Credits to Pre Release Custody for all Non-U.S. Citizens with an Active Detainer* (Jan. 30, 2025) (appended to sentencing memorandum as Attach. 2). This fact has caused the Sixth Circuit to remark that "potential deportation and fewer prison

opportunities should be a reason for a downward variance," if not conclusive of the issue (a particular defendant might deserve a longer sentence for "abusing the privilege" of living in the United States). *United States v. Zheng*, 27 F.4th 1239, 1244 (6th Cir. 2022) (quoting *United States v. Petrus*, 588 F.3d 347, 356 (6th Cir. 2009)). Courts in the District of Columbia Circuit, for instance, regularly approve downward variances of six months for defendants like Mr. Al-Dulaimi, almost as a matter of course. *United States v. Abukhatallah*, 181 F.4th 1276, 1291 (D.C. Cir. 2026).

The need to incapacitate a defendant – to keep him behind bars so he cannot harm the public – is only one of the interests driving a court's sentencing decision; the purposes of retribution and general deterrence still weigh in favor of Mr. Al-Dulaimi's punishment, even if incapacitation does not. The Court can confidently decide, however, that a period of imprisonment substantially shorter than the Sentencing Guidelines minimum will be fully sufficient to satisfy those needs for retribution and deterrence that must be fulfilled in our case.

The Court can similarly be confident that the fourth and final key goal of sentencing, rehabilitation, has been well served by Mr. Al-Dulaimi already and will continue to mark his progress into the future. "Haitham has expressed remorse to me on multiple occasions," a friend writes. "Our conversations have left me with

the sincere impression that he regrets his decisions, understands that he made a serious mistake, and genuinely wants the opportunity to do what is right moving forward." (Letters, pg. 3.) Another friend confirms this: "He has spoken about what happened with genuine remorse and has repeatedly expressed his desire to do right moving forward. From the conversations I have had with him, I believe he understands the seriousness of his mistake and the consequences it has caused." (*Id.* at pg. 5.)

Mr. Al-Dulaimi accordingly asks the Court to sentence him to a term of imprisonment shorter than the Sentencing Guidelines minimum, and he thanks the Court for its consideration.

Respectfully submitted,

*Michael R. Mazzoli*

Scott C. Cox
Michael R. Mazzoli
Attorneys for Defendant
COX & MAZZOLI PLLC
600 West Main Street, Suite 300
Louisville, Kentucky 40202
502-589-6190
MMazzoli@CoxAndMazzoli.com

## CERTIFICATE OF SERVICE

On September 23, 2026, I electronically filed this document through the ECF system, which will send a notice of electronic filing to counsel of record.

*Michael R. Mazzoli*

Michael R. Mazzoli