UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

UNITED STATES OF AMERICA PLAINTIFF

v. CRIMINAL NO. 3:24-CR-108-BJB

HAITHAM AL-DULAIMI DEFENDANT

**UNITED STATES' SENTENCING MEMORANDUM**
*-Electronically Filed-*

For nearly a year and a half, defendant Haitham Al-Dulaimi engaged in a complex scheme to illegally smuggle weapons without required export licenses from the United States to Iraq. The Defendant sent firearms smuggled in the doors of cars shipped to Umm Qasr port in Iraq which were suspected to be for the Sadrist Movement militia in Iraq. Neither the Defendant nor any of his co-conspirators applied for or obtained a license from the U.S. Department of Commerce to export firearms. He knew that these firearms were also acquired by his co-conspirators under false pretenses. Defendant directed his co-conspirators to the type and quantity of firearms to be purchased. He also provided the payment for purchase. As part of this scheme, the Defendant conspired to knowingly make false and fictitious statements to firearms dealers, to purchase firearms knowing that they would be possessed in furtherance of a felony, and defrauding the United States government by causing a freight forwarder to provide false information on export paperwork.

For this conduct, the Government believes that a low end guidelines sentence of 57 months' imprisonment followed by a three-year term of supervised release appropriately accounts for the nature and circumstances of the offense, defendant's history and characteristics, and the need to

promote respect for the law, provide just punishment, and afford adequate deterrence.

## Procedural History and Background[1]

A. The Export Control Reform Act and Export Administration Regulations

On August 13, 2018, the President signed into law the National Defense Authorization Act of 2019, which included the Export Control Reform Act ("ECRA"). *See* 50 U.S.C. § 4801 *et seq*. ECRA provided permanent statutory authority for the Export Administration Regulations ("EAR"), Title 15, Code of Federal Regulations, Parts 730-774.

ECRA provides that "the national security and foreign policy of the United States require that the export, reexport, and in-country transfer of items, and specified activities of United States persons, wherever located, be controlled." 50 U.S.C. § 4811. To that end, ECRA granted the President the authority to "control … (1) the export, reexport, and in-country transfer of items subject to the jurisdiction of the United States, whether by United States persons or foreign persons; and (2) the activities of United States persons, wherever located, relating to" specific categories of items and information. *Id*. § 4812. ECRA granted to the Secretary of Commerce the authority to establish the applicable regulatory framework. *Id*. § 4813.

Through the EAR and ECRA, the U.S. Department of Commerce's Bureau of Industry and Security ("BIS") reviews and controls the export from the United States to foreign destinations of certain items. In particular, BIS places restrictions on the export and reexport of items that it determined could make a *significant contribution to the military potential of other nations or that could be detrimental to the foreign policy or national security of the United States*. Such restrictions depend on several factors, including the technical characteristics of the item, the

[1] Additional detail on the factual background and regulatory framework for export cases can be found in the Final Presentence Investigation Report (DN 104) ("PSR") and Indictment (DN 1).

destination country, the end user, and the end use of the item.

The most sensitive items are identified on the Commerce Control List ("CCL") set forth in Title 15, Code of Federal Regulations, Part 774, Supplement Number 1. Items listed on the CCL are categorized by Export Control Classification Number ("ECCN"), each of which is subject to export control requirements depending on destination, end use, and end user of the item. Firearms, including those that the Defendant directed others to purchase on his behalf with the intent to ship to Iraq, are listed on the CCL with an ECCN number and controlled for National Security, Regional Stability, and United Nations Embargo reasons to Iraq.

B. Overview of the Criminal Scheme

Between at least February 2023 and September 2024, the Defendant, together with others, conspired to fraudulently export firearms that were purchased in the United States to send to Iraq, to engage in the business of dealing firearms without a license, and to knowingly make false and fictitious statements to firearms dealers intended and likely to deceive the dealers as to material facts. DN 104, PSR ¶1; DN 92, Plea Agreement at ¶3. On October 13, 2023, the Defendant facilitated the transportation and concealment of thirty-eight firearms by arranging for the firearms to be shipped concealed in vehicles to Iraq. DN 92 at ¶3. Defendant sought to evade U.S. export controls by placing firearms within plastic bags in the door areas of three vehicles that were in a shipping container bound for Baghdad, Iraq. DN 104, PSR ¶¶ 17-18. The firearms were concealed in multiple layers of packaging and further concealed inside vehicle door panels. DN 92 at ¶3. Defendant received the firearms from at least three co-conspirators who fraudulently purchased the guns knowing they would go to the Defendant but who falsely represented to firearms dealers that they were the actual end users. DN 104, PSR ¶¶ 19-22. While thirty-eight firearms were recovered from vehicles destined for Iraq, Defendant conspired with co-conspirators to knowingly

make false and fictitious statements to firearms dealers as to the owner of the firearms on at least 13 other occasions for the purchase of at least 26 additional firearms. *Id.* at ¶¶ 21-23. In addition, the Defendant caused the freight forwarder who shipped the vehicles to make a false declaration to the U.S. government on export paperwork because the forwarder did not report the export of any firearms along with the vehicles. DN 92 at ¶3.

## The Guidelines Range and PSR

The Presentence Investigation Report correctly calculates a total offense level applicable to the offenses of 25 and a criminal history category of I, which corresponds to a sentencing guidelines range of 57 to 71 months' imprisonment. DN 104, PSR ¶ 65. The United States agrees with the PSR's guidelines calculation.

## Analysis of the § 3553(a) Factors

After considering the nature and circumstances of the offense, defendant's history and characteristics, and the relevant public policy factors, the United States respectfully recommends a sentence of 57 months' imprisonment, followed by three years of supervised release. The United States believes such a sentence is sufficient but not greater than necessary to comply with the § 3553(a) factors.

### A. The Nature and Circumstances of the Offense

As detailed herein, the nature and circumstances of export control offenses are serious. Items like firearms are controlled by the Export Administration Regulations through power delegated by the President and passed down to the U.S. Department of Commerce. Export control offenses implicate national security concerns because unlawful exports risk having sensitive U.S. technology end up in adversaries' possession. Once controlled items like firearms or handguns

leave the United States, the U.S. government cannot know to what end they are being used for, or who or what foreign entities are making use of them.

Defendant here knew he could not export firearms to Iraq without a license. He attempted to do so anyways by hiding dozens of firearms within the doors of cars in shipping containers. In furtherance of this scheme, he conspired with others to purchase firearms on his behalf and make false statements to firearms dealers in the course of those purchases. While thirty-eight firearms were recovered from a shipment bound for Iraq, Defendant conspired to purchase firearms in violation of the law on at least thirteen other occasions and for at least twenty-six additional firearms that were purchased by co-conspirators and not recovered in the shipped vehicles that were detained in February 2024. It is likely that those firearms were also shipped to Iraq.

This export offense did not involve shipment to just any country, but to a country that has been destabilized and that has ongoing conflict and significant human rights violations. *See* U.S. Department of State, "2024 Country Reports on Human Rights Practices: Iraq," https://www.state.gov/reports/2024-country-reports-on-human-rights-practices/iraq (last accessed Sept. 23, 2026). Iraq is subject to a United Nations arms embargo that is recognized by the United States. *See* 15 C.F.R. § 746.3 ("Pursuant to United Nations Security Council (UNSC) Resolutions 1483 and 1546 and other relevant resolutions, the United Nations maintains an embargo on the sale or supply to Iraq of arms and related materiel and their means of production . . . "). Export of the firearms that Al-Dulaimi attempted to ship to Iraq would be subject to a presumption of denial of any license application at DOC. *Id.* Defendant's actions violated not only U.S. law but also

longstanding arms embargoes on sending arms to Iraq, and should be considered as serious offenses.

B. General Deterrence

There is a need for general deterrence in this case. General deterrence is necessary because as quickly as these prosecutions are brought, other procurement networks may be set up to smuggle weapons to Iraq. A significant sentence will send a powerful message to each of these links in the chain and warn them that participating in the illegal export of goods to Iraq will result in imprisonment and other consequences.

C. Defendant's History and Characteristics

Defendant's history and characteristics weigh in favor of a guidelines sentence. Although he grew up in war-torn Iraq and witnessed trauma at a young age, Defendant came to the United States more than a decade ago and admitted that he was raised in a loving home with supportive parents and has a large social circle. His sister concurred with that assessment. *See* DN 104, PSR ¶¶ 50, 53. He does not have a history of mental health issues or substance abuse issues. *Id.* at ¶¶ 56-57. Defendant had opportunities to live as a productive and lawful member of society and instead chose to engage in criminal activity for over a year that jeopardized the United States' national security. His history does not mitigate the need for just punishment here.

D. Public Policy Factors

The United States believes a low end of the guidelines sentence of 57 months' imprisonment is sufficient but not greater than necessary to satisfy the public policy factors set forth in 18 U.S.C. § 3553(a). Such a sentence appropriately reflects the seriousness of the offense and the need to promote respect for the law and provide just punishment; avoids unwarranted

sentencing disparities; and affords adequate deterrence and protects the public from further crimes. *See* 18 U.S.C. § 3553(a)(2)(A)-(C), (a)(6).

The Defendant's actions represent a blatant disregard for U.S. laws and rules in place for public safety. Illegal firearms smuggling risks our nation's materiel being used abroad by unknown actors for nefarious purposes. Conspiring with others to violate federal firearms purchasing laws endangers systems in place for domestic safety and security. Conspiring to provide fraudulent information on export paperwork by concealing the true content of exports abroad circumvents the protections that the United States has put in place to record and track what U.S.-origin dual use (i.e. potentially military use) goods are going abroad, and to where. A low end of the guidelines sentence of 57 months' imprisonment will send a message that this conduct is unacceptable and contrary to U.S. public policy on multiple levels.

Defendant's conduct was serious. As explained above, Congress and the President have controlled and regulated the export of dual use goods, including firearms, to further U.S. national security and foreign policy interests. *See generally United States v. Curtiss-Wright Export Corp.*, 299 U.S. 304, 322-324 (1936) (summarizing the nation's history of embargoes and export controls); *see* 50 U.S.C. § 4811 (authorizing export controls for "national security and foreign policy" reasons, including to control the proliferation and acquisition of conventional weapons). Defendant's conduct exemplifies the harm to U.S. national security that Congress sought to punish and deter through these statutes. A low end of the guidelines sentence of 57 months' imprisonment will deter future crimes by the Defendant and would promote respect for the rule of law. *See United States v. Pugh*, 515 F.3d 1179, 1194 (11th Cir. 2008) ("[G]eneral deterrence [] is one of the key

purposes of sentencing") (quoting *United States v. Medearis*, 451 F.3d 918, 920-21 (8th Cir. 2006)).

## Conclusion

For the foregoing reasons, the United States respectfully requests the Court to apply the Sentencing Guidelines, as outlined above, follow the statutory directives set out in 18 U.S.C. § 3553(a), and impose a low end of the guidelines sentence of 57 months' imprisonment, followed by a three-year term of supervised release. This sentence is a sentence that is sufficient, but not greater than necessary to satisfy the § 3553(a) factors.

Respectfully submitted,

KYLE G. BUMGARNER
United States Attorney

*/s/ Alicia P. Gomez*

Alicia P. Gomez
Assistant U.S. Attorney
717 West Broadway
Louisville, Kentucky 40202
Phone: (502) 582-5911
alicia.gomez@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on September 23, 2026, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to counsel for the defendant.

*/s/ Alicia P. Gomez*

Alicia P. Gomez
Assistant U.S. Attorney